IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CIVIL ACTION NO.: 1:26cv23068

_____
)
MICHAEL F. SILVER and                          )
MARILYN F. SILVER,                             )
        Plaintiffs,                       )
                                           )
vs.                                            )
                                           )
NCL (BAHAMAS) LTD., A BERMUDA                   )
COMPANY,                                       )
        Defendant.                        )
_____)

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

This is an action for damages in excess of $75,000, exclusive of interest and costs, arising from Defendant's negligence which caused Plaintiff MICHAEL F. SILVER to suffer severe and permanent bodily injuries while aboard the *Norwegian Gem* cruise ship on May 3, 2025. Plaintiff MARILYN F. SILVER brings a derivative claim for loss of consortium.

### PARTIES

1.    Plaintiff, MICHAEL F. SILVER ("Mr. Silver"), is a citizen of Vermont and was a fare-paying passenger aboard the *Norwegian Gem* on May 3, 2025.

2.    Plaintiff, MARILYN F. SILVER ("Mrs. Silver"), is a citizen of Vermont and the lawful spouse of Mr. Silver. Mrs. Silver brings a claim for loss of consortium.

3.    Defendant, NCL (BAHAMAS) LTD., A BERMUDA COMPANY ("NCL"), has its principal place of business at 7665 Corporate Center Drive, Miami, Florida 33126. At all

1

relevant times, Defendant operated the *Norwegian Gem* and was responsible for the vessel's maintenance, safety, and crew.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship). Plaintiffs are citizens of Vermont. Defendant is a citizen of Bermuda and of Florida. The amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      This Court also has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1333 (general maritime law) because the accident occurred on a vessel sailing in navigable waters engaged in an activity bearing a substantial relationship to traditional maritime activity. Plaintiffs designate this claim as one brought at law under the Court's diversity jurisdiction. Although brought at law rather than in admiralty, the claim is governed by the general maritime law.

6.      Venue is proper under 28 U.S.C. § 1391(b) because Defendant's principal place of business is within this District, and because Plaintiffs' Guest Ticket Contract contains a forum-selection clause requiring actions to be filed in the United States District Court in Miami, Florida.

7.      Plaintiffs have complied with all conditions precedent to bringing this action. Mr. Silver reported the accident to the vessel's security and medical personnel shortly after it occurred, and an incident report and medical records were prepared onboard. Plaintiffs' counsel sent Defendant a timely written notice of claim by certified letter dated November 3, 2025.

**GENERAL ALLEGATIONS**

8.    On or about May 1, 2025, Plaintiffs embarked as fare-paying passengers aboard the *Norwegian Gem*, Reservation No. 59188539, for a four-night cruise departing Miami, Florida and visiting Nassau, Bahamas and Great Stirrup Cay, Bahamas.

9.    On **Saturday, May 3, 2025**, the Vessel docked at Nassau, Bahamas at approximately 8:00 a.m. Plaintiffs went ashore to tour the island with friends. The weather was calm and clear, and the seas were very calm.

10.   At approximately 2:00 to 4:00 p.m. on May 3, 2025 (the "Incident"), Mr. Silver returned to his assigned stateroom aboard the Vessel and entered the bathroom to take a shower.

11.   Prior to the Incident, the stateroom and bathroom had been cleaned by the ship's housekeeping staff, who are agents, servants, or employees of NCL.

12.   At the time of the Incident, the shower area had **no non-slip rubber bathmat**, and the floor was composed of very large, smooth, fiberglass or tile surfaces that were extremely slippery when wet. There was **no grab handle or grab bar** near the shower entrance. The combination of these conditions, smooth flooring, residual soap or cleaning solution, absence of a non-slip mat, and absence of a grab bar, rendered the shower area unreasonably dangerous for its intended use.

13.   Mr. Silver was barefoot at the time he entered the shower area, as is customary and expected for shower use.

14.   As Mr. Silver reached with his left arm to close the glass shower door by its grab knob, both of his feet suddenly and without warning slipped on the smooth, un-matted, soapy shower floor.

15. Mr. Silver fell violently, spinning and striking his body on the threshold at the bottom of the shower door, also striking his right shoulder and lower back with great force. The fall caused Mr. Silver to believe he had broken his back and knocked the wind out of him. He was in complete agony and was unable to get up on his own.

16. The dangerous condition of the shower floor was not open and obvious to Mr. Silver. The residual soap film, cleaning solution, or other foreign substance on the smooth fiberglass or tile surface was not visible to the naked eye, and the absence of safety features such as a non-slip mat and grab bar was a latent hazard that would not be apparent to a reasonable passenger using the shower for its intended purpose.

17. Mrs. Silver was present in the stateroom. She assisted Mr. Silver from the floor and contacted the ship's medical department. Their stateroom butler, William, was also notified and in turn contacted ship security.

18. The following morning, May 4, 2025, Mr. Silver was transported by wheelchair to the Vessel's onboard medical clinic. The ship's medical staff administered a breathalyzer test, which registered **0.0 BAC**, confirming Mr. Silver had consumed no alcohol on the day of the Incident. X-rays were performed and pain medication was prescribed.

19. Following the Incident, a representative of the vessel's security team went to the stateroom, inspected the shower area, and took photographs and measurements. Security personnel observed that there was no rubber mat in the shower.

20. The morning after the security inspection, a **rubberized bathmat appeared** in the stateroom shower area, where none had been present previously. This subsequent remedial measure demonstrates the feasibility of safer alternative measures and

4

Defendant's awareness of the dangerous condition prior to or immediately following the Incident.

21. On or about May 5, 2025, Mr. Silver was flown home to Vermont with wheelchair assistance.

22. Upon returning home, Mr. Silver presented to the Southwestern Vermont Medical Center Emergency Room in Bennington, Vermont, where he received X-rays, a CAT scan, and was treated for severe lower back and right shoulder injuries. He was prescribed OxyContin and medicated pain patches.

23. Mr. Silver was subsequently evaluated by Dr. Barney Rubenstein of the Glens Falls, New York Hospitals Health Network, who confirmed a torn right rotator cuff. He was referred to Ortho NY in Clifton Park, New York, where an MRI with contrast dye confirmed a **right rotator cuff tear** (front right cuff).

24. NCL knew or should have known that the shower floors in its staterooms were dangerously slippery when wet and that the absence of non-slip bathmats and grab bars posed a foreseeable risk of serious injury to passengers.

25. NCL had actual and/or constructive notice that the shower area becomes slippery and therefore unreasonably dangerous when wet.

26. NCL's actual or constructive knowledge was derived from prior use of the same or substantially similar area(s), prior slip and fall instances on the same or similarly configured areas, industry standards regarding such areas, the recurring nature of the dangerous conditions, and the length of time the area had been in an unsafe condition before Mr. Silver was injured, a length of time sufficient to invite corrective measures. *See Everett v. Carnival Cruise Lines*, 912 F.2d 1355 (11th Cir. 1990).

5

27. As a direct and proximate result of the Incident, Mr. Silver suffered severe bodily injuries, including a large lumbar hematoma and a right rotator cuff tear, among other permanent injuries.

## COUNT I – NEGLIGENCE

28. Plaintiffs re-allege all allegations pled in paragraphs one (1) through 27 above as if alleged fully herein.

29. At all material times, NCL owed Mr. Silver, as a fare-paying passenger, a duty of reasonable care under the circumstances, including the duty to maintain the stateroom shower in a reasonably safe condition and free of conditions that could cause injury. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989).

30. Defendant and/or its agents, servants and/or employees breached its duty of reasonable care through the following acts and/or omissions:

   a. Failure to provide a reasonably safe shower area, free of dangers, including an unreasonably hazardous wet and slippery condition;

   b. Failure to provide a non-slip bathmat or rubberized bathing mat in the shower area;

   c. Failure to use safe flooring surfaces and materials in and around the shower area;

   d. Failure to install adequate grab bars, handrails, or safety handles near the shower entrance;

   e. Failure to promulgate and/or enforce adequate policies and procedures for safety of passengers using stateroom shower areas;

6

f. Failure to adequately train crewmembers in the proper method of maintaining the shower area, cleaning spills, and ensuring passenger safety;

g. Failure to inspect the shower area at regular and adequate intervals to prevent the wet and slippery condition from occurring or remaining;

h. Failure to have adequate risk management procedures in place designed to reduce the occurrence of the type of incident suffered by Mr. Silver;

i. Failure to analyze prior incidents aboard Defendant's vessels occurring under the same or similar conditions so as to remedy such hazardous conditions;

j. Negligently maintaining the shower area by causing or allowing it to become saturated with a wet, slippery substance, including residual soap or cleaning solution, and thus creating an unreasonably unsafe condition, and failing to discover and remedy the dangerous condition;

k. Additional acts of negligence to be shown according to proof.

31. At all material times, NCL knew or should have known, in the exercise of reasonable care, of the dangerous condition of the wet and slippery shower floor as referenced above. The condition that caused Mr. Silver's fall should and could have been detected with a reasonable inspection, as the condition existed for a sufficient length of time to invite corrective measures.

32. The subsequent placement of a rubberized bathmat in the shower after the Incident demonstrates the feasibility of safer alternative measures and Defendant's awareness of the dangerous condition.

33. Notwithstanding NCL's actual or constructive knowledge of the dangerous condition of the shower where Mr. Silver slipped and fell, NCL failed before the time of Mr. Silver's

injury to take reasonable measures to maintain the shower in a reasonably safe condition by correcting its dangerous condition. NCL thereby failed to exercise reasonable care for the safety of its passengers, including Mr. Silver, and was thereby negligent.

34. As a direct and proximate result of NCL's negligence, Mr. Silver slipped and fell and has thereby sustained and will continue in the future to sustain severe bodily injuries.

35. As a direct and proximate result of the event described above, Mr. Silver was injured in and about his body and extremities. He suffered pain therefrom, mental anguish, disfigurement, and the inability to lead a normal life. Furthermore, he incurred medical, hospital, and other out-of-pocket and health care expenses as a result of his injuries, the future medical and health care expenses being reasonably certain to occur. He has sustained loss of earnings and earning capacity in the past and future—he is self-employed on a commission-only basis earning approximately $4,000 to $8,000 per month and has lost in excess of three months of work. These damages are permanent or continuing in their nature and Mr. Silver will continue to sustain and incur these damages in the future.

**WHEREFORE**, Plaintiffs demand judgment against NCL for damages suffered as a result of the alleged incident and injury including pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, hospitalization, medical and nursing care and treatment, lost earnings and loss of earning capacity experienced in the past and to be experienced in the future, together with all taxable court costs and prejudgment interest.

## COUNT II – NEGLIGENCE (FAILURE TO WARN)

36. Plaintiffs re-allege all allegations pled in paragraphs one (1) through 35 above as if alleged fully herein.

37. At all material times, NCL owed Mr. Silver, as a fare-paying passenger lawfully onboard the subject vessel, a duty of reasonable care, including the duty to take reasonable steps to warn passengers, such as Mr. Silver, of known hazards.

38. The dangerous condition of the stateroom shower was not open and obvious to Mr. Silver. The presence of residual soap, cleaning solution, or other wet or foreign substance on the smooth fiberglass or tile floor was a latent condition not visible to the naked eye, and the absence of a non-slip mat and grab bar was not a hazard that would be apparent to a reasonable passenger.

39. Defendant and/or its agents, servants and/or employees breached its duty to warn Mr. Silver through the following acts and/or omissions:

    a. Failing to adequately warn of injury risks created by the wet and slippery condition of the shower floor, including the presence of residual soap, cleaning solution, or other wet or foreign substance;

    b. Failing to place any, or any adequate, "Wet Floor" signs, cones, or other warnings in or near the shower area;

    c. Failure to warn Mr. Silver of the unreasonably dangerous condition of the stateroom shower area;

d. Failure to warn passengers of other accidents previously occurring in the same or similar areas due to hazardously slippery surfaces.

40. At all material times, NCL knew or should in the exercise of reasonable care have known of the dangerous condition of the shower as referenced above.

41. NCL's actual or constructive knowledge was derived from prior use of the same or substantially similar area(s), prior slip and fall instances on the same or similarly configured areas, industry standards regarding such areas, the recurring nature of the dangerous conditions, and the length of time the area had been in an unsafe condition before Mr. Silver was injured, a length of time sufficient to invite corrective measures.

42. Notwithstanding NCL's actual or constructive knowledge of the dangerous condition, NCL failed before the time of Mr. Silver's injury to take reasonable measures to warn passengers of the existence of the dangerous condition or to inspect the shower area at regular and adequate intervals to detect and remedy the hazardous condition. NCL thereby failed to exercise reasonable care for the safety of its passengers including Mr. Silver and was thereby negligent.

43. As a direct and proximate result of NCL's negligence, Mr. Silver slipped and fell and has thereby sustained and will continue in the future to sustain severe bodily injuries.

44. As a direct and proximate result of the event described above, Mr. Silver was injured in and about his body and extremities. He suffered pain therefrom, mental anguish, disfigurement, and the inability to lead a normal life. Furthermore, he incurred medical, hospital, and other out-of-pocket and health care expenses as a result of his injuries, the future medical and health care expenses being reasonably certain to occur. He has sustained loss of earnings and earning capacity in the past and future, he is self-employed

on a commission-only basis earning approximately $4,000 to $8,000 per month and has lost in excess of three months of work. These damages are permanent or continuing in their nature; and Mr. Silver will continue to sustain and incur these damages in the future.

WHEREFORE, Plaintiffs demand judgment against NCL for damages suffered as a result of the alleged incident and injury including pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, hospitalization, medical and nursing care and treatment, lost earnings and loss of earning capacity experienced in the past and to be experienced in the future, together with all taxable court costs and prejudgment interest.

### COUNT III – LOSS OF CONSORTIUM

45. Plaintiffs re-allege all allegations pled in paragraphs one (1) through 44 above as if alleged fully herein.

46. Mrs. Silver is the lawful spouse of Mr. Silver and has been married to him since approximately 1977, a period of forty-eight (48) years.

47. As a direct and proximate result of NCL's negligence and the injuries sustained by Mr. Silver as described herein, Mrs. Silver has suffered and will continue to suffer the loss of her husband's society, companionship, comfort, care, affection, assistance, services, and consortium. Said losses are permanent and continuing in nature.

WHEREFORE, Mrs. Silver demands judgment against NCL for compensatory damages for loss of consortium together with all taxable court costs and prejudgment interest.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury of all issues so triable as of right.

Respectfully submitted, Plaintiffs
By their Attorney,

Dated: April 30, 2026

*/s/ Louis J. Muggeo*

Louis J. Muggeo, Esq.
LOUIS J. MUGGEO & ASSOCIATES
133 Washington Street
Salem, MA 01970
(978) 741-1177
lmuggeo@ljmassoc.com
Florida Bar #0656054

12